TRUJILLO RODRIGUEZ & RICHARDS, LLC
Lisa J. Rodriguez
Nicole M. Acchione
258 Kings Highway, East
Haddonfield, NJ 08033
Telephone: 856-795-9002
856-795-9887 (fax)

GREEN JACOBSON, P.C.
Allen Press
7733 Forsyth Boulevard, Suite 700
Clayton, MO 63105
Telephone: 314-862-6800
314-862-1606 (fax)

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT ADAIR, JAMES BLACK, DENNIS BRYANT, KATHLEEN COSAND, WAYNE DENNIS, DAVID DITZEL, JAMES KRANICH, CURT LOWERY, SCOTT MCKEE, MICHAEL MELAND, ROBERT MYKYTIUK, CHAD POIRIER, CHRISTOPHER SESTICH, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN AIRLINES, INC., <br><br> Defendant. | Civil Action No.: <br><br> Jury Trial Demanded |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND IN THE ALTERNATIVE FOR DAMAGES**

For their complaint, Plaintiffs state:

### Jurisdiction and Venue

1. Plaintiff Scott Adair is an individual residing in Missouri.

-1-

2. Plaintiff James Black is an individual residing in Florida.

3. Plaintiff Dennis Bryant is an individual residing in Missouri.

4. Plaintiff Kathleen Cosand is an individual residing in Illinois.

5. Plaintiff Wayne Dennis is an individual residing in Kansas.

6. Plaintiff David Ditzel is an individual residing in Florida.

7. Plaintiff James Kranich is an individual residing in Colorado.

8. Plaintiff Curt Lowery is an individual residing in Missouri.

9. Plaintiff Scott McKee is an individual residing in Texas.

10. Plaintiff Michael Meland is an individual residing in Colorado.

11. Plaintiff Robert Mykytiuk is an individual residing in New Hampshire.

12. Plaintiff Chad Poirier is an individual residing in Florida.

13. Plaintiff Christopher Sestich is an individual residing in California.

14. Defendant ("American") is a Delaware corporation in good standing. It operates the nation's third largest commercial airline.

15. American operates commercial flights in New Jersey, and this is Subject to personal jurisdiction within this District. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

### American Acquires TWA and Furloughs the Majority of TWA Pilots

16. Plaintiffs are airline pilots currently in the service of American. They were formerly pilots at Trans World Airlines ("TWA").

17. American, through a wholly owned subsidiary, purchased most of the

assets of TWA in April, 2001 and hired nearly all of TWA's pilots.

18.  Pilot wages and working conditions at both American and TWA were controlled by seniority. As part of the TWA transaction, American placed the former TWA pilots on the American pilot seniority list. This was initially the subject of negotiations between the respective pilot groups.

19.  The Allied Pilots Association ("APA") is the certified bargaining agent for all American pilots. After the American/TWA transaction was announced, the APA met with a committee of TWA pilots to discuss their placement on the American pilot seniority list. No agreement was reached before the sale closed in April 2001.

20.  The seniority discussions between the APA and the TWA pilots continued after the sale closed, but no agreement was reached. In November 2001, American and APA simply foisted on the TWA pilots a seniority plan that they developed on their own. This was done pursuant to a modification to the American/APA Collective Bargaining Agreement ("CBA") known as "Supplement CC." A copy of Supplement CC is attached as Exhibit 1.

21.  Overall, Supplement CC was grossly unfair to the TWA pilots. Over 1,200 of the 2,300 TWA pilots were simply "stapled" to the very bottom of the American pilot seniority list and given no credit for the seniority they had earned at TWA. The remainder of the TWA pilots were given credit for only a fraction of their seniority.

22. The events of 9/11 caused massive lay-offs, or "furloughs," throughout the airline industry, including American. As generally required by the American/APA CBA, the furloughs at American were made in inverse seniority order. The former TWA pilots freshly stapled to the bottom of the American seniority list were the first pilots to be furloughed. Their losses were staggering.

23. Beginning in 2007, and continuing through March 2009, American started to add pilots for the first time since 9/11. It did so by "recalling" pilots from furlough in seniority order.

24. The recalled pilots were predominantly former TWA pilots.

25. Plaintiffs were recalled in 2008 and 2009.

26. On or about January 22, 2010, American notified Plaintiffs that it intended to furlough them again.

27. Plaintiffs' furloughs are set to be implemented on February 28, 2010. American announced a second round of furloughs for April 1, 2010.

### The Announced Furloughs Would Violate Supplement CC

28. TWA operated an expansive airline hub in St. Louis before its merger with American.

29. American has sharply reduced its service in St. Louis since the acquisition, but it is still one of American's largest bases of operation, or "domiciles."

30. Supplement CC, although globally unfair to TWA pilots, did reserve all

-4-

flying in St. Louis to former TWA pilots. If the February 28 furloughs are implemented, however, there will not be a sufficient number of former TWA pilots to fly all the St. Louis routes. That flying will necessarily go to so-called "legacy" American pilots (non-former TWA pilots), who will be flying routes specifically reserved to TWA pilots by Supplement CC.

31. Plaintiffs are all First Officers based in St. Louis and assigned to MD-80 narrow-body jets.

32. The routes flown by Plaintiffs are not being eliminated. If they are furloughed, their routes will be flown by legacy American pilots. This would directly violate Supplement CC's reservation of St. Louis flying to former TWA pilots.

### The Pursuit of a Labor Grievance Would be Futile

33. The American/APA CBA contains a detailed process for pilots to grieve any labor contract dispute they may have with American.

34. The administrative process begins with the filing of a written grievance. A grievance is initially heard and decided by a designated member of American management, the so-called "Chief Pilot."

35. If the grievant is not satisfied with the Chief Pilot's decision, he or she may appeal to the Vice President-Flight. If the grievant is not satisfied with the Vice-President-Flight's decision, he or she may appeal to an arbitration panel known as the "System Board of Adjustment."

36. The System Board of Adjustment consists of five members. Two members are selected by American, two are selected by the APA and the fifth, the "neutral arbitrator," is selected by agreement of American and the APA.

37. In almost every case heard by the System Board of Adjustment, the company selected members adopt the company's position and the union selected members adopt the union's position. Their respective votes almost always cancel each other out, leaving the neutral arbitrator as the real decision maker. This would not be case here if Plaintiffs' grieved their furloughs.

38. If Plaintiffs were to grieve their current dispute, the American selected members of the System Board would decide the matter in favor of American. The APA selected members of the System Board, however, would also decide the matter in favor of American. The APA leadership has taken numerous adverse positions against the TWA pilots when it was charged with representing its interests.

39. The seniority integration process which followed the American/TWA merger and the eventual furlough of over 1,400 TWA pilots following September 11, 2001 created animus between the two pilot groups that continues to this day. There was even litigation between the former TWA pilots and the APA in connection with APA's role in the prior integration.

40. Legacy American pilots outnumber former TWA pilots roughly 10:1. The APA's leadership is thus dominated by legacy American pilots.

41. The APA has long sought to rescind Supplement CC and its

reservation of flying in St. Louis to former TWA pilots.

42. The APA's bias against TWA pilots would taint any arbitration of this dispute. The APA's Vice-President has already stated publically in writing that the announced furlough of TWA pilots will not violate Supplement CC.

43. To cure this taint, one of the former TWA pilots currently scheduled to be furloughed on April 1 requested that the APA waive its right to select members to the System Board of Adjustment and to assign those rights to him so that he could pursue a grievance in a fair forum.

44. The APA did not respond to that request. Any grievance regarding the furloughs would thus be heard and decided by the System Board of Adjustment as it is currently constituted.

45. If Plaintiffs were to grieve this dispute, the best result they could ever hope for before the System Board of Adjustment would be a 4-1 decision in favor of American, with the neutral arbitrator providing the sole dissent.

46. Plaintiffs' administrative remedy is futile, relieving them of any burden to exhaust that remedy.

### The Plaintiffs Will Suffer Irreparable Injury if Furloughed

47. Plaintiffs are highly-skilled professional commercial airline pilots who fly for one of the world's major carriers. As such, they are highly compensated and enjoy substantial prestige in their communities.

48. Plaintiffs were each furloughed from American following 9/11, and

remained on furlough for five years, some longer. None of them found pilot positions at a major carrier during their first furlough.

49. Plaintiffs were just recently recalled to active service and are now scheduled to be furloughed again as part of an action that violates their contractual rights.

50. Open pilot positions at major carriers are almost non-existent and the furloughs would destroy Plaintiffs' professional careers.

51. Plaintiffs' skills are not transportable to a different industry, and if furloughed, they will be seeking employment in the midst of a global recession that has caused 10% unemployment in the United States. Their prospects for gainful employment are dim at best.

52. The Plaintiffs will each suffer substantial financial and personal hardship if they are furloughed again. These losses can not be atoned with money. Their injuries will be irreparable.

### Prayer for Relief

Plaintiffs respectfully request the Court enter the following:

A. An order declaring that the planned furloughs of the Plaintiffs violate Supplement CC;

B. A preliminary and permanent injunction enjoining the planned furloughs of the Plaintiffs, or in the alternative an order that the Plaintiffs be

reinstated to active service at American and a judgment in their favor for their lost income shown at trial with interest from February 28, 2010;

    C.    An award of Plaintiffs' costs incurred herein; and

    D.    Such other relief as the Court deems proper.

Dated: February 22, 2010                  TRUJILLO RODRIGUEZ & RICHARDS, LLC

                                                s/ Lisa J. Rodriguez
                                                Lisa J. Rodriguez
                                                Nicole M. Acchione
                                                258 Kings Highway, East
                                                Haddonfield, NJ 08033

                                                GREEN JACOBSON, P.C.
                                                Allen Press
                                                7733 Forsyth Boulevard, Suite 700
                                                Clayton, MO 63105